# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# EL PASO DIVISION

| | | |
|---|---|---|
| SYLVIA MORRIS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | EP-09-CV-242-KC |
| | § | |
| ADC TELECOMMUNICATIONS, Inc., | § | |
| | § | |
| Defendant. | § | |

## ORDER

On this day the Court considered Defendant's "12(b)(1) Motion to Dismiss for Lack of Subject-Matter Jurisdiction, and in the Alternative, § 1404 Motion to Transfer Venue" (Doc. No. 4). For the reasons set forth herein, the Motion is **DENIED**.

## I.   BACKGROUND

Defendant ADC Telecommunications, Inc. ("ADC"), a provider of global network infrastructure products and services, is incorporated and has its principal place of business in Minnesota. Def.'s Mot. 1 (Doc. No. 4). Plaintiff Sylvia Morris ("Morris") is a resident of El Paso, Texas. Def's Notice of Removal ¶ 3 (Doc. No. 1). She was employed as a Knowledge Base Assistant by ADC at its facility in Santa Teresa, New Mexico, starting in April 2007 and was terminated in November 2008. Def's Mot. 2; Pl.'s Resp. to Def.'s Mot. 1 (Doc. No. 6). On December 4, 2008, Morris filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and the New Mexico Department of Labor's Human Rights

1

Division ("HRD")[1] alleging that ADC discriminated against her based on her national origin, and selected her for a lay-off in retaliation for filing complaints with the company's human resources department regarding instances of workplace discrimination. Def.'s Mot. Ex. A ("Charge of Discrimination"). On December 30, 2008, the EEOC issued Morris a Notice of Right to Sue letter. *Id.* Ex. B.

On March 30, 2009, Morris filed a lawsuit against ADC in County Court at Law No. 5 in El Paso County, Texas, styled *Sylvia Morris v. ADC Telecommunications, Inc.*, Cause No. 2009-1464, alleging national origin discrimination, and retaliation, in violation of the New Mexico Human Rights Act ("NMHRA"). Def.'s Notice of Removal ¶ 1; *see* N.M. STAT. ANN. §§ 28-1-1 to 1-15 (West 2008). On June 29, 2009, ADC removed the case to this Court based on diversity of citizenship. Def.'s Notice of Removal ¶ 3. On July 1, 2009, ADC filed the instant Motion seeking alternatively dismissal for lack of subject matter jurisdiction, or a transfer of venue to Las Cruces, New Mexico. Def.'s Mot. 1; *see also* Def.'s Reply 4 (Doc. No. 7) (specifying the Las Cruces Division of the District of New Mexico). On July 14, 2009, Morris was issued an Order of Nondetermination by the HRD. Pl.'s Resp. to Def.'s Mot. Ex A.

## II. DISCUSSION

The two alternative forms of relief raised in the Motion will be discussed in turn. The Court first addresses Defendant's motion to dismiss for lack of subject-matter jurisdiction.

---

[1] The HRD and EEOC participate in a work-sharing system, under which the submission of a single Charge of Discrimination document serves to file said charge with both agencies. *See, e.g., Mitchell-Carr v. McLendon*, 980 P.2d 65, 69 (N.M. 1999).

A.  **Motion to Dismiss**

1.  **Standard**

Federal courts are courts of limited jurisdiction. *People's Nat'l Bank v. Office of the Comptroller of the Currency of the United States*, 362 F.3d 333, 336 (5th Cir. 2004). Without jurisdiction conferred by statute, federal courts lack the power to adjudicate claims. *Id.* A party may challenge a district court's subject matter jurisdiction by filing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1).

A motion to dismiss pursuant to Rule 12(b)(1) must be considered before any other challenge because a court must have jurisdiction before determining the validity of a claim. *Moran v. Kingdom of Saudi Arabia*, 27 F.3d 169, 172 (5th Cir. 1994). When considering a motion to dismiss for lack of subject matter jurisdiction, the court may consider (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). "[T]he plaintiff constantly bears the burden of proof that jurisdiction does in fact exist" when jurisdictional facts are controverted. *Id.*

2.  **Administrative exhaustion and subject matter jurisdiction**

ADC argues that this Court lacks subject matter jurisdiction because Morris failed to fully exhaust her administrative remedies.[2] Def.'s Mot. 4. ADC points to two distinct ways in which

---

[2] There appears to be no across-the-board rule on whether a failure to exhaust administrative remedies before suit undercuts the subject matter jurisdiction of the forum court, or whether it constitutes a failure to satisfy a condition precedent to a claim. The nature of the claim being asserted, and the nature of the available administrative remedy, both appear to

Morris allegedly failed to exhaust her administrative remedies. These arguments will be addressed in turn.

>    a.  **Did the initial filing of the suit in Texas state court, instead of New Mexico state court, constitute a failure of administrative exhaustion?**

Defendant ADC argues that Plaintiff Morris's filing of her lawsuit in Texas state court, and attendant failure to file it in New Mexico state court, constitutes a failure of administrative exhaustion. *Id.* ADC contends that since the statute calls an action *de novo* in New Mexico state court a route of "appeal" from an HRD final determination, it is to be construed as part of the administrative remedy. *See* N.M. STAT. ANN. § 28-1-13.

Such an argument was recently considered and rejected by this Court in a similar case, *Quintana v. ADC Telecommunications,* No. 3:09-CV-110-KC, 2009 WL 2382981 (W.D. Tex. July 31, 2009), and it is rejected in this case as well. In *Quintana*, the plaintiff asserted a NMHRA employment discrimination claim in a suit originally filed in Texas state court, which was removed to this Court on diversity grounds. *Quintana*, 2009 WL 2382981, at *1. The defendant argued that failure to bring the claim in New Mexico state court, as provided for in the statute, amounted to a failure of administrative exhaustion. *Id.* at *2. The underlying reasoning of this Court was that a *de novo* action in state court is inherently a judicial remedy and cannot be considered part of the NMHRA's "administrative" grievance procedure, despite the surrounding

---

influence the way in which a failure of exhaustion is characterized and treated. In this case, failure of administrative exhaustion for claims made under the NMHRA has been characterized by the New Mexico Supreme Court as affecting subject-matter jurisdiction. *See Mitchell-Carr v. McLendon*, 980 P.2d 65, 71 (N.M. 1999). Neither party disputes this characterization.

verbiage in the statute. *Id.*; *see also Mitchell-Carr v. McLendon,* 980 P.2d 65, 70 (N.M. 1999) (characterizing "full compliance with NMHRA grievance procedures" as a "prerequisite" to filing a claim in state court, implying that the state court action is distinct from the "grievance procedures").

The instant case is virtually identical to *Quintana* in all material respects. Morris filed her NMHRA claim in a Texas state court in El Paso, complaining of discrimination in her workplace, located in the nearby town of Santa Teresa, New Mexico. Def.'s Notice of Removal ¶ 1. ADC removed the case to this Court on diversity grounds. *Id.* ¶ 3. ADC here, too, contends that failing to file the claim in New Mexico state court leads to a failure of administrative exhaustion. Def.'s Mot. 4. Because this Court previously held that a New Mexico state court filing is not part of the administrative remedy, failure to take such a step in this case does not block a finding of administrative exhaustion.

        b.        Did obtaining an Order of Nondetermination from the HRD after suit was filed fail to satisfy the exhaustion requirement?

ADC argues that Morris's failure to obtain an Order of Nondetermination from the HRD before filing suit constitutes a failure of administrative exhaustion, much in the way that the failure of a plaintiff to obtain a right-to-sue letter from the EEOC is a failure of administrative exhaustion in a Title VII action.[3] *Id.* at 5. Moreover, because ADC filed the instant Motion

---

[3] Though Morris did obtain an EEOC right-to-sue letter before the instant suit was filed, as noted in Section I, *supra*, this fact is not relevant to the question at hand. This is because the claims in this case are all made under New Mexico state law, which requires the state HRD to issue its own order before the administrative process is complete. Had the claims been made under Federal law, then the EEOC letter would have been deemed to be the completion of the administrative process.

before that defect was cured, ADC claims that it is entitled to a dismissal, notwithstanding the fact that Morris obtained the required Order shortly after this Motion was filed. The instant Motion was filed on July 1, 2009, *see* Certif. of Service, Def.'s Mot. 11, while HRD's Order of Nondetermination was issued on July 14, 2009. Pl.'s Resp. to Def.'s Mot. Ex. A.

While this argument starts off on firmer ground, it is also ultimately unavailing. Though it is undisputed that obtaining such an order is part of administrative exhaustion, the New Mexico Supreme Court has held that obtaining an Order of Nondetermination after suit has been filed is sufficient to cure the jurisdictional defect and allow the suit to continue. *See Mitchell-Carr*, 980 P.2d at 71. That court has so held even when the order was obtained after a motion to dismiss was filed. *Id.* Since Morris obtained the Order after the suit was filed and while the motion to dismiss was pending, there is no failure of exhaustion.

While ADC points to two Title VII employment discrimination cases in the Northern District of Texas in which the district court held that a defendant could obtain dismissal if it filed its motion before the plaintiff had obtained a right-to-sue letter from the EEOC, even if that letter is then issued during the pendency of the motion, those cases are not controlling. *See Gates v. City of Dallas*, No. 3:96-CV-2198-D, 1997 WL 405144, at *2 n.2 (N.D. Tex. July 15, 1997) (noting that defendants in an employment discrimination suit will be "entitled to dismissal without prejudice," if they "move for summary judgment before the plaintiffs obtain their right-to-sue letters"); *Sanborn v. David A. Dean & Assoc.*, No. 3:98-CV-2239-D, 1998 WL 690608 (N.D. Tex. Sept. 29, 1998) (applying *Gates* and dismissing an employment discrimination claim when the right-to-sue letter was obtained after a motion to dismiss was filed but before the court acted on it).

Though New Mexico courts generally look to federal civil rights jurisprudence when interpreting the NMHRA,[4] the two systems clearly diverge on this point. Not only is the conclusion different, but the premises differ as well. The Northern District of Texas, following Fifth Circuit precedent, considered the failure of administrative exhaustion in Title VII cases to be a failure of a condition precedent to the claim, and not a defect in subject matter jurisdiction. *Sanborn,* 1997 WL 405144, at*1. That characterization prompted those courts to hold that dismissal was proper when a failure of exhaustion existed at the time of the filing of the motion, notwithstanding that the defect was cured between the filing of the motion and the ruling by the court. *Id.*[5] The New Mexico Supreme Court, by contrast, has characterized a failure of administrative exhaustion in NMHRA cases as a defect in subject matter jurisdiction, but one which can be cured after filing. *Mitchell-Carr v. McLendon*, 980 P.2d at 71. In such a case, a cure obtained while a motion is pending is effective, and the suit should not be dismissed. *Id.* Because Morris obtained an Order of Nondetermination from the HRD before this Court acted on the instant Motion, the defect was properly cured and dismissal for lack of subject matter jurisdiction is inappropriate.

    B.    **Motion For Convenience Transfer**

---

[4] *See Nava v. City of Santa Fe*, 103 P.3d 571 (N.M. 2004).

[5] The Northern District of Texas appears committed to the rule that an intervening cure is ineffective in Title VII cases. Other courts seem more open to accepting a late cure – at least one which arrives before the court *acts* on a motion to dismiss or a motion for summary judgment. *See, e.g., Hollis v. Johnston-Tombigibee Furniture Mfg. Co.*, No. 1:93-CV-346-DD, 1994 WL 1890941 (N.D. Miss. Dec. 21, 1994) (holding that a right-to-sue letter obtained before after suit commences but before "the court addresses the matter" is a sufficient cure in a Title VII case).

In the event that dismissal is not granted, Defendant ADC asks for alternative relief in the form of a change of venue to the federal district court in Las Cruces, New Mexico. Def.'s Mot. 1, *see also* Def.'s Reply 4. ADC has not contended that venue in this Court is improper, but it has asked for a convenience transfer under 28 U.S.C. § 1404(a).

### 1. Standard

A district court may transfer any civil action to another district or division where the action might have originally been brought if to do so would be convenient for the parties and in the interest of justice. 28 U.S.C. § 1404(a). In determining whether to transfer a case pursuant to § 1404(a), a district court must undertake a two-part analysis. *See In re Volkswagen*, 545 F.3d 304, 315 (5th Cir. 2008) (en banc). First, the court must decide whether the district to which a transfer is sought would have been proper in the first instance. *See* 28 U.S.C. § 1404(a). Second, the moving party must show good cause. *Volkswagen*, 545 F.3d at 315 n.10 ("[P]laintiff's choice of venue . . . places a significant burden on the movant to show good cause for the transfer.").

To determine whether good cause exists, the *Volkswagen* court held that a court should compare the two venues using eight of the *forum non conveniens* factors laid down by the Supreme Court in *Gulf Oil v. Gilbert*, 330 U.S. 501 (1947). *Id.* at 313-15. That court noted, though, that the degree of inconvenience under these factors needed to justify a § 1404(a) transfer is less than the degree needed to justify a dismissal for *forum non conveniens*, since transfer does not risk saddling the plaintiff with a statute of limitations problem, while a dismissal without prejudice does. *See id.*

The eight factors are divided into two groups of four – the private interest factors and the public interest factors. The Fifth Circuit points to these four private-interest factors: (1) Relative

8

ease of access to sources of proof, (2) the availability of compulsory process to secure the attendance of witnesses, (3) the cost of attendance for willing witnesses, and (4) all other practical problems. *Id.* at 315. It also points to these four public interest factors: (1) administrative difficulties flowing from court congestion, (2) the local interest in having localized interests decided at home, (3) the familiarity of the forum with the law that will govern the case, and (4) the avoidance of unnecessary problems of conflicts of laws or in the application of foreign law. *Id.*

### 2. Would venue be proper in Las Cruces?

If a transfer is to be contemplated, ADC must first demonstrate that Las Cruces, New Mexico would be a proper venue under the statute. ADC asserts that venue would be proper because a substantial part of the events or omissions giving rise to the Morris's claims occurred within the territorial jurisdiction of the Las Cruces court. Def.'s Mot. 7. This would render venue proper under 28 U.S.C. § 1391(a)(2). Even a cursory reading of the facts of this case, set down in Section I, *supra*, supports this view, and Morris does not challenge it. The Court therefore finds that venue would be proper in Las Cruces, and that ADC's request cannot fail on these grounds.

### 3. Has Defendant shown good cause for transfer?

To overcome Morris's original choice of venue, ADC must meet a "significant burden" to show good cause by reference to the eight convenience factors noted above. *See Volkswagen*, 545 F.3d at 315 n.10. While ADC makes some showing as to why Las Cruces may be more convenient than El Paso, its showing is not strong enough to carry such a burden.

#### a. Analysis of the private interest *Gilbert* factors

9

The four private interest *Gilbert* factors that the Fifth Circuit points to are these: (1) relative ease of access to sources of proof, (2) the availability of compulsory process to secure the attendance of witnesses, (3) the cost of attendance for willing witnesses, and (4) all other practical problems. *Id.* at 315.

Regarding access to proof, El Paso seems slightly more favorable. The workplace in question was in Santa Teresa, New Mexico. Def's Mot. 2. Though across the state line, this municipality is actually part of the El Paso metropolitan area.[6] Any sources of proof actually located at the workplace are closer to El Paso than Las Cruces by approximately twenty five miles. Any evidence in electronic form, or tangible evidence that must be shipped from corporate headquarters in Minnesota, is equally convenient to either city.

Compulsory process over local witnesses is available in either venue, as any co-workers or supervisors who live or work in the vicinity of the Santa Teresa workplace would be within the 100 mile subpoena range of either court. *See* FED. R. CIV. P. 45(b)(2)(B). Morris, however, points to one witness in Dallas whom she claims would be within the subpoena power of this Court but not the court in Las Cruces. This witness would not be within the subpoena power of this Court for the purposes of compelling an appearance in El Paso at trial, but would be within the subpoena power of this Court for the purposes of compelling attendance at a deposition held in the Dallas area. *See* FED. R. CIV. P. 45(b)(2)(C) (giving federal courts the same subpoena power as state courts sitting in the same place); TEX. R. CIV. P. 176 (giving Texas state courts,

---

[6] The Court, in its discretion, takes judicial notice of matters of local geography. FED. R. EVID. 201(b)–(c); *see also Two-Way Media v. AT&T*, 636 F. Supp. 2d 527, 536 n.6 (S.D. Tex. 2009) ("This Court has discretion to take judicial notice of matters of geography, including the distances between cities.").

which sit in a location far from an in-state witness, the power to subpoena that witness for a deposition held near his or her place of residence). Issuing a deposition subpoena under the aegis of a federal court in Dallas, though, would remain an option even if the case were transferred to Las Cruces. *See* FED. R. CIV. P. 45(a)(2). Thus, a deposition of the Dallas witness is likely available in either case. The other potential set of witnesses are corporate headquarters' employees in Minnesota, and they are equally out of the inherent subpoena range of a federal court in either El Paso or Las Cruces. Because the of the negligible difference in the availability of process to obtain evidence and witnesses, this factor is neutral.

The cost to witnesses, and to parties, to attend trial in Las Cruces would be higher than in El Paso, but not by a great margin – witnesses near the workplace would have to commute an additional twenty file miles each way to Las Cruces, and out-of-town witnesses would most likely have to fly into El Paso for either venue because it has the larger airport; Las Cruces would be an added drive. The parties have shown no other practical issues. In summary, Las Cruces seems largely equivalent to El Paso under these private factors, but it is subject to the inconvenience of a somewhat longer drive for anyone who must attend trial.

### b. Analysis of the public interest *Gilbert* factors

The four public interest *Gilbert* factors that the Fifth Circuit points to are these: (1) administrative difficulties flowing from court congestion, (2) the local interest in having localized interests decided at home, (3) the familiarity of the forum with the law that will govern the case, and (4) the avoidance of unnecessary problems of conflicts of laws or in the application of foreign law. *Volkswagen*, 545 F.3d at 315.

Regarding court congestion, the parties did not brief this issue authoritatively, but it

11

appears that both the El Paso and Las Cruces federal courts have busy dockets. The local interests argument cuts in two different ways: On the one hand, one could argue that disputes which arise in the El Paso area to be resolved in the same area, but on the other hand, one could argue that it is proper for a dispute that arises in New Mexico to be decided in New Mexico. Given these competing ways of framing the issue, this factor is neutral.

Regarding the third public interest factor – familiarity of the proposed venues with the law of the case – it would stand to reason that the federal court in Las Cruces would be more familiar with NMHRA than this Court. The Western District of Texas has only considered one such case previously – *Quintana*, discussed *supra* at Section II(B)(1). However, other federal courts have held that applying state law from any given jurisdiction is not a serious hurdle, no matter where a federal court sits. *See ExpressJet Airlines, Inc. v. RBC Capital Markets Corp.*, No. 09-CV-992, 2009 W.L. 2244468, at * 13 (S.D. Tex. July 27, 2009). This Court concludes that, as a practical matter, this factor weighs slightly in favor of transfer to Las Cruces. Regarding the fourth public interest factor, foreign law and conflicts of law, the parties have submitted no arguments on this issue.

### 3. Has the Burden Been Carried?

When weighing all eight factors discussed above, the Court concludes that Defendant has not carried the "significant burden" needed to justify transfer. *See Volkswagen*, 545 F.3d at 315 n.10. The private interest factors, taken together, weigh slightly in favor of keeping the case in El Paso. One public interest factor – familiarity with the applicable law – weighs in favor of Las Cruces. But that single factor cannot be sufficient to warrant transfer – federal courts routinely apply sister state and foreign law when necessary. In sum, ADC has not tilted the balance away

from Morris's original choice of forum. For these reasons the Court holds that a transfer to the District of New Mexico, Las Cruces Division, is inappropriate.

### III.    CONCLUSION

For the reasons stated above, the Court holds that Morris has not failed to exhaust her administrative remedies, and that subject matter jurisdiction is therefore not defective in this case. The Court also holds that while venue would be proper in Las Cruces, ADC has not made a showing that is strong enough to support a transfer. Accordingly, both forms of relief requested by ADC are denied.

**IT IS ORDERED** that Defendant's "12(b)(1) Motion to Dismiss for Lack of Subject-Matter Jurisdiction, and in the Alternative, § 1404 Motion to Transfer Venue" (Doc. No. 4) is **DENIED**.

**SO ORDERED.**

**SIGNED** on this 23rd day of October, 2009.

_____
KATHLEEN CARDONE
UNITED STATES DISTRICT JUDGE